DON-RAY TOOL & DIE, INC., *v.*
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

1. INSURANCE—POLICY DURATION—MONTH TO MONTH.
   Facts that group insurance policy purchased by employer for employees had a fixed anniversary date and was renewable annually for 1-year periods did not make it an annual policy, when terms of policy establish that it is effective on certain date and continues effective from month to month until terminated according to policy terms, renewable annually on same basis.

2. WORDS AND PHRASES—WAIVER.
   Waiver is the voluntary, intentional relinquishment of a known right.

3. INSURANCE—RIGHT TO TERMINATE—WAIVER.
   Finding by trial court that insurance company had not waived its contractual right to terminate employer's group insurance policy for employees when number of employees covered fell below 25, *held,* not clearly erroneous under record showing that insurance company continued policy for a long time with less than 25 employees covered in expectation that employer would overcome its difficulties.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 and 29A Am Jur, Insurance § 317 *et seq.,* 357 *et seq.,* 1768 *et seq.*
[2, 4] 29A Am Jur, Insurance §§ 1009–1011.
[3] 29A Am Jur, Insurance § 1758 *et seq.*
[5] 29 Am Jur, Insurance § 376 *et seq.*
[6] 29 Am Jur, Insurance § 382 *et seq.*

4. SAME—ESTOPPEL.

Estoppel is an abatement raised by law of rights and privileges of an insurer where it would be inequitable to permit their assertion.

5. SAME—TERMINATION OF POLICY—ESTOPPEL.

Finding of trial court that insurer was not estopped to cancel employer's group insurance policy on employees when number of employees covered fell below 25, as permitted by contract, *held*, not clearly erroneous, where record does not establish any inequity in permitting insurer to assert its right.

6. SAME—NOTICE OF CANCELLATION—FORM.

Notice of cancellation of group insurance policy given pursuant to clear contractual right of insurer to terminate policy when number of employees covered fell below 25, *held*, effective to terminate policy 31 days after it was given, according to policy terms, although notice was not in exact form prescribed by policy and was somewhat ambiguous.

Appeal from Macomb; Spier (James E.), J. Submitted Division 2 October 4, 1966, at Lansing. (Docket No. 1,294.) Decided November 22, 1966. Leave to appeal granted by Supreme Court February 1, 1967. See 378 Mich 749, 381 Mich 416.

Declaration by Don-Ray Tool & Die, Inc., a Michigan corporation, against John Hancock Mutual Life Insurance Company, a Massachusetts corporation, for damages caused by allegedly wrongful cancellation of employee group life insurance policy. Judgment for defendant. Plaintiff appeals. Affirmed.

*Watson, Lott & Wunsch,* for plaintiff.

*Dickinson, Wright, McKean & Cudlip (Charles F. Clippert* and *Herbert G. Sparrow, III,* of counsel), for defendant.

QUINN, P. J. May 11, 1953, plaintiff made application for a group insurance policy to defendant, the effective date of which was to be May 11, 1953, if the application was approved at defendant's home

office, an approximate monthly premium was paid, and at least 85% of plaintiff's eligible employees had made written application for insurance. The policy applied for was issued by defendant June 12, 1953 and provides, among other things, as follows:

"This policy is issued in consideration of the application of the employer, and of the payment by the employer of the initial premium due on May 11, 1953, which is the effective date of this policy, and of the payment thereafter by the employer during the continuance of this policy of premiums due on the 11th day of each succeeding month.

"The first anniversary of this policy shall be May 11, 1954, and subsequent policy anniversaries shall be the 11th day of May of each year thereafter.

"Premium payment.   Premiums hereunder are payable monthly in advance at the home office of the company in Boston, or to a duly authorized agent presenting an official receipt signed by the president or secretary, and countersigned by the agent designated thereon.   The payment of any premium shall not maintain the insurance under this policy in force beyond the date when the next premium becomes payable, except as hereinafter provided.   [Nothing thereafter provided affects the issue involved here.]

"The company reserves the right to fix new premium rates on May 11, 1954 and on each policy anniversary thereafter.

"Renewal.   This policy may be renewed on its first anniversary and on each subsequent anniversary without the issue or delivery of a new policy for further terms of one year each in consideration of the payment of premiums determined as provided herein for the amount of insurance as renewed; provided, however, that in the event the number of employees insured under this policy at any time shall be less than 25, or less than 85% of the eligible

employees the company shall have the right to terminate this policy on any premium due date by giving written notice to the employer at least 31 days prior to such date."

The policy further provided that employees on or before the effective date thereof were eligible for insurance May 11, 1953; as to employees after the effective date, they became eligible after one month of continuous service with plaintiff. If the classification of an employee changed, the amount of his insurance changed on the date of classification change. Except for conversion privilege of life insurance, insurance ceased when employment terminated.

By letter dated July 31, 1961, and received by plaintiff August 10, 1961, defendant notified plaintiff of the termination of insurance because plaintiff had less than 25 employees. During the period the insurance policy was in force it was amended from a contributory policy to a noncontributory policy, and with respect to definitions, coverage, premium and per cent of employees required to be covered. It is not disputed that much of the time the insurance was in force plaintiff had fewer than 25 employees and that defendant knew this fact.

Plaintiff filed suit for damages on the theory of wrongful cancellation of insurance by defendant. After trial, the trial judge held defendant liable for all losses through September 11, 1961, and since there was no proof of such losses, judgment of no cause for action entered and plaintiff appeals.

Plaintiff states the first question involved as follows:

"Did the trial court err in its opinion when it concluded that the group insurance policy issued to plaintiff had been converted from an annually renewable policy to a monthly policy?"

It is the opinion of this Court that the question assumes as a fact that which is not a fact, namely, that the trial court concluded that the policy had been converted from an annual to a monthly policy. A reading of the trial court's opinion indicates no such conclusion. The record indicates no basis for such a conclusion by the trial court or this Court. The fact that the policy had a fixed anniversary date does not make it an annual policy, nor does the fact that it was renewable annually for 1-year periods. The terms of the policy and the subject matter of the insurance both establish a policy that is effective on a given date and continues effective from month to month until terminated according to policy terms, renewable annually on the same basis. We conclude that plaintiff's first question states no issue requiring determination.

The second question as framed by plaintiff is:

"Did the trial court err in deciding that the defendant company did not waive or was not estopped from terminating the policy on any premium due date upon the basis there was [sic] less than 25 employees insured under the policy?"

The trial court found that defendant had neither waived its contract right to terminate nor was it estopped from asserting it. Appleman[1] defines waiver as "the voluntary, intentional relinquishment of a known right." Plaintiff bore the burden of proving waiver. *Helmer* v. *Dearborn National Insurance Co.* (1948), 319 Mich 696. We cannot say the finding of the trial court was clearly erroneous (GCR 1963, 517.1) because the record does not convince us there was an intentional relinquishment of the right to terminate. Rather it indicates an intention on the part of defendant to cooperate with plaintiff through a difficult period with the expectation that plaintiff

---

[1] 16 Appleman, Insurance Law & Practice, § 9081.

would solve its difficulties. When this did not occur, defendant gave notice of termination. At the same reference, Appleman defines estoppel as "an abatement raised by law of rights and privileges of the insurer where it would be inequitable to permit their assertion."

Plaintiff bore a similar burden of proof with respect to proving estoppel. Again we cannot say the finding of the trial court was clearly erroneous because the record does not establish an inequity in permitting defendant to assert its right of termination when it did. The cases relied on by plaintiff all involve forfeiture or cancellation and an inequity, and they are not controlling here.

Finally, plaintiff raises this question:

"Did the trial court err in holding that defendant gave proper notice of cancellation in compliance with the policy even assuming it had not waived or been estopped from its right to terminate?"

While the notice of termination relied on by defendant is somewhat ambiguous and is not in the exact form prescribed by the policy, in view of the clear contract right of defendant to terminate, which was neither waived nor which defendant was estopped from asserting, we subscribe to the majority view[2] and the view of the trial court that it was effective 31 days after its receipt by plaintiff or September 11, 1961.

Affirmed, with costs to appellee.

N. J. Kaufman and McGregor, JJ., concurred.

---

[2] 96 ALR 2d 290.