DON-RAY TOOL & DIE, INC., *v.* JOHN HANCOCK MUTUAL
LIFE INSURANCE COMPANY.

1. INSURANCE—TERMINATION OF GROUP LIFE POLICY—WAIVER.

Finding by trial judge that insurer under group life insurance pol-
icy providing for termination at insurer's option when the
number of insured employees of plaintiff dropped below a
specified minimum had not waived its optional right to ter-
minate despite the passage of a lengthy period during which
it enjoyed such a right *held,* supported by evidence and not
clearly erroneous.

2. SAME—TERMINATION OF GROUP LIFE POLICY—ESTOPPEL.

Insurer under policy of group life insurance was not estopped to
exercise its option to terminate policy when enrollment fell
below specified minimum of plaintiff's employees where the
actions of defendant insurer during period in which it could
have exercised such option in no way caused plaintiff to act
to its detriment and where plaintiff did not rely upon the
continued existence of the policy after notice of termination.

3. SAME—TERMINATION OF GROUP LIFE POLICY—METHOD.

Termination of group life insurance policy by defendant insurer
by written 31-day notice as provided for in the policy was
in no way affected by the fact that the insurer was unable
to effectuate termination by another method provided for in
the policy, a retroactive termination by written agreement.

Appeal from Court of Appeals, Division 2, Quinn,
P. J., and McGregor and N. J. Kaufman, JJ., affirm-
ing Macomb, Spier (James E.), J. Submitted De-

REFERENCE FOR POINTS IN HEADNOTES
[1-3] 29A Am Jur, Insurance § 1768 *et seq.*

cember 3, 1968.   (Calendar No. 21, Docket No. 51,-656.)   Decided December 27, 1968.

5 Mich App 263, affirmed.

Declaration by Don-Ray Tool & Die, Inc., a Michigan corporation, against John Hancock Mutual Life Insurance Company, a Massachusetts corporation, for damages for wrongful cancellation of group life insurance policy.   Judgment for defendant.   Affirmed by Court of Appeals.   Plaintiff appeals. Affirmed.

*Watson, Lott & Wunsch,* for plaintiff.

*Dickinson, Wright, McKean & Cudlip (Charles F. Clippert* and *Herbert G. Sparrow, III,* of counsel), for defendant.

PER CURIAM.   On May 11, 1953 plaintiff applied to defendant for a group insurance policy.   The policy, issued June 12, 1953, provides in part:

"Renewal.   This policy may be renewed on its first anniversary and on each subsequent anniversary without the issue or delivery of a new policy for further terms of one year each in consideration of the payment of premiums determined as provided herein for the amount of insurance as renewed; *provided, however, that in the event the number of employees insured under this policy at any time shall be less than twenty-five,* or less than eighty-five per cent of the eligible employees *the company shall have the right to terminate this policy on any premium due date by giving written notice to the employer at least thirty-one days prior to such date."* (Emphasis added.)

"Modification of policy.   This policy may be amended or discontinued at any time by written agreement between the company and the employer."

At the time of application for insurance, 33 employees were eligible for coverage under the policy. From January 1954 through June 1961, the number of employees insured frequently was less than 25. Defendant knew this. Defendant notified plaintiff of the termination of insurance because it had less than 25 employees by letter dated July 31, 1961, received by plaintiff August 10, 1961. The letter stated the termination was effective "on the premium due date," but did not give the date. Accompanying the letter was a proposed amendment to the contract dated August 1, 1961, providing for retroactive termination on May 10, 1961, by written agreement of the parties. It was never signed or accepted by plaintiff. On the same date, plaintiff also received a memorandum advising plaintiff of a new method of billing for group insurance plans, a new billing with due date of August 11, 1961, and a new rating sheet. On August 24, 1961, plaintiff received from defendant a remittance of $700.48 for premiums paid beyond the lapse date.

On September 21, 1962, plaintiff instituted suit claiming that defendant wrongfully terminated the group insurance policy. The trial court took proofs exclusively upon the question of liability. The trial judge found that the insurance company was "carrying the plaintiff along on a month-to-month basis, in anticipation of their resuming full operations." He concluded that defendant insurer had the right "to terminate this policy on any premium due date by giving written notice to the employer at least 31 days prior to such date," and that defendant company neither waived this right nor was estopped from asserting it.

The only question remaining was whether the defendant had exercised that right by giving proper notice. The trial court held that defendant insurer

had a right to attempt to discontiue this policy by
agreement, or to terminate the policy on any pre-
mium due date upon giving a 31-day notice under the
proviso pertaining to less than 25 employees; that
"the fact that both forms of termination were used
simultaneously, would not affect the legality of either
form that was finally adopted or pursued"; and that
defendant was liable only for claims arising prior
to termination date of September 11, 1961.

The Court of Appeals, 5 Mich App 263, held that
the findings of the trial court regarding the claims
of waiver and estoppel were not clearly erroneous
(GCR 1963, 517.1); that the record disclosed an in-
tention on the part of defendant insurer to co-operate
with plaintiff rather than an intentional relinquish-
ment of the right to terminate; that no inequity re-
sulted by permitting defendant to assert its right of
termination; and that notice of termination was
adequate in view of the clear contract right of de-
fendant to terminate, citing the "majority view,"
found in 96 ALR2d 286, 290.

The questions presented are:

Did defendant waive its contractual right to termi-
nate the policy upon the basis that there were less
than 25 employees insured, or was it estopped from
so doing by reason of its previous knowledge and
nonaction?

Did defendant insurer give a proper and valid
notice of termination?

No question is raised in this case as to the validity
of the above quoted policy provisions, nor is it
claimed that they are in any way ambiguous. Plain-
tiff does claim that defendant's knowledge of the
situation, its inaction, and continued coverage, so-
called affirmative acts, asserted representations by
its agents, and plaintiff's inability to obtain com-
parable insurance, constituted waiver or estoppel.

By the terms of the policy, defendant was under no obligation to exercise its right to terminate but could do so at its option. We have examined the record in this case and agree with the Court of Appeals that the finding of the trial judge that defendant did not relinquish this right to terminate is supported by the evidence and is not clearly erroneous. It is this finding by the trial judge on the specific facts which distinguishes this case from *Franklin* v. *Northern Life Insurance Company* (1940), 4 Wash 2d 541 (104 P2d 310), in which case it was necessary for the court to construe the meaning of a policy and in so doing the acts of the insurer were held to have placed a construction upon what the contract meant.

As for estoppel, we do not perceive how the actions of defendant in any way caused plaintiff to act to its detriment, nor did plaintiff rely upon the continued existence of the policy after notice of termination. Quite the contrary, plaintiff neither paid nor tendered any further premiums. Plaintiff attempted to procure other insurance. It is these facts which distinguish this case from *Cantrell* v. *Benefit Association of Railway Employees* (1959), 136 Mont 426 (348 P2d 345), cited by plaintiff, in which case a majority of the court held that no notice of cancellation had been given and that the acts of the defendant in retaining the premium had led insured to believe the policy was still in force.

We agree with the trial judge and the Court of Appeals that two methods of termination were provided for in the policy. The fact that the insurance company was unable to effectuate termination by one method (a retroactive termination by written agreement) did not vitiate the prospective termination by the 31-day notice.

The Court of Appeals is affirmed.   Costs to appellee.

DETHMERS, C. J., and KELLY, BLACK, T. M. KAVANAGH, O'HARA, ADAMS, and T. E. BRENNAN, JJ., concurred.